UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                   )
THIRD DEGREE FILMS,                )
                                   )
                  Plaintiff,       )
                                   )
        v.                         )      CIVIL ACTION
                                   )      NO. 12-10761-WGY
DOES 1-47,                         )
                                   )
                  Defendants.)
_____)
```

MEMORANDUM & ORDER

YOUNG, D.J.                                    October 2, 2012

## I.   INTRODUCTION

In recent months, this Court has grown increasingly troubled by "copyright trolling,"[1] specifically as it has evolved in the adult film industry.  The Court is not alone in its concern.  Judges, scholars, and journalists alike have noted the recent trend - indeed, new business model[2] - whereby adult film

---

[1] A copyright troll is an owner of a valid copyright who brings an infringement action "not to be made whole, but rather as a primary or supplemental revenue stream."  James DeBriyn, Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages, 19 UCLA Ent. L. Rev. 79, 86 (2012).

[2] See DeBriyn, supra note 1, at 79 (explaining that "[t]o supplement profits from copyrighted works, copyright holders have devised a mass-litigation model to monetize, rather than deter, infringement, . . . utiliz[ing] the threat of outlandish damage awards to force alleged infringers into quick settlements"); Christopher M. Swartout, Comment, Toward a Regulatory Model of Internet Intermediary Liability: File-Sharing and Copyright Enforcement, 31 Nw. J. Int'l L. & Bus. 499, 509-10 (2011)

1

companies file mass lawsuits against anonymous Doe defendants, identified only by their IP addresses, alleging that each IP address reproduced its pornographic film via file sharing technology in a single swarm, thus infringing the company's valid copyright and entitling the company to statutory damages.[3]

While it is without question that a valid copyright holder is entitled to seek protection of its intellectual property in federal court, it appears that in at least some of these cases, adult film companies may be misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to

---

(describing the "purely profit-driven" "low-cost, high-volume campaigns to collect settlements from file-sharers").

[3] See, e.g., Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 240 (S.D.N.Y. 2012) (noting the proliferation of these cases across the country, and expressing concern specifically with the multitude of "ex parte applications for expedited discovery of identifying information pertaining to hundreds or thousands of John Doe defendants"); In re BitTorrent Adult Film Copyright Infringement Cases, Nos. 11-3995(DRH)(GRB), 12-1147(JS)(GRB), 12-1150(LDW)(GRB), 12-1154(ADS)(GRB), 2012 WL 1570765, at *1 (E.D.N.Y. May 1, 2012) (observing that there has been a "nationwide blizzard" of such actions and documenting abusive litigation tactics employed by the adult film company plaintiff in an apparent attempt to coerce settlement from the Doe defendants); DeBriyn, supra note 1, at 90-91 (remarking that "the copyright troll industry has been 'multiplying like especially fertile rabbits' to scour the Internet in the hope of monetizing copyright infringement" (citation omitted)); Jason Koebler, Porn Companies File Mass Piracy Lawsuits: Are You At Risk?, U.S. News and World Report (Feb. 2, 2012), http://www.usnews.com/news/articles/2012/02/02/porn-companies-fil e-mass-piracy-lawsuits-are-you-at-risk (estimating that over 220,000 individuals have been sued since mid-2010 for illegally downloading films, many of them pornographic, via BitTorrent, and noting that the suits are designed to coerce settlement).

facilitate demand letters and coerce settlement, rather than ultimately serve process and litigate the claims.[4]  And while it is true that every defendant to a lawsuit must assess reputational costs in his or her determination of whether to settle or defend an action, the potential for embarrassment in being publicly named as allegedly infringing such salacious works as "Big Butt Oil Orgy 2" or "Illegal Ass 2," may be playing a markedly influential role in encouraging a myriad of Doe defendants to settle once subpoenas are issued - a bargaining chip the adult film companies appear to well understand.[5]

---

[4] For example, in the Eastern District of Virginia, the court ordered the plaintiff to show cause why sanctions were not warranted under Federal Rule of Civil Procedure 11 where, after subpoenaing the Doe defendants' identifying information from the Internet Service Providers ("ISPs"), the plaintiff contacted the defendants with harassing telephone calls, demanding $2,900.00 to end the litigation, and when any of the defendants filed a motion to dismiss or sever, the plaintiff voluntarily dismissed the individual from the litigation rather than allow the merits of the motion to be heard. Raw Films, Ltd. v. Does 1-32, No. 3:11cv532-JAG, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011). The court averred:

> This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them.  The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.

Id. at *3.

[5] See, e.g., SBO Pictures, Inc. v. Does 1-3036, No. 11-4220 SC, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011) (expressing concern that the Doe defendants - "whether guilty of copyright

Against this backdrop of mass lawsuits and potentially
abusive litigation tactics, courts nationwide have become
skeptical of allowing the adult film companies unfettered access

---

infringement or not - would then have to decide whether to pay
money to retain legal assistance to fight the claim that he or
she illegally downloaded sexually explicit materials, or pay the
money demanded[,] . . . [which] creates great potential for a
coercive and unjust 'settlement'") (quoting Hard Drive Prods.,
Inc. v. Does 1-30, No. C-11-3826 DMR, 2011 WL 5573960, at *3
(N.D. Cal. Nov. 16, 2011)).  The Electronic Frontier Foundation,
a non-profit, member-supported digital civil liberties
organization, submitted an amicus curiae brief in support of an
ISP provider's motion to quash or modify subpoenas in a similar
mass copyright infringement case, and stated:

> While Plaintiffs may not have fully elaborated on
> their motives in bringing suit, the invasive, sweeping
> manner in which it was brought indicates that they hope
> to leverage the risk of public embarrassment to convince
> Defendants to quickly capitulate, whether or not they did
> anything wrong.  A plaintiff's lawyer in a recent similar
> mass porn downloading case has not been shy about telling
> the press that he expects defendants there to promptly
> settle precisely because many people who are accused of
> downloading pornography are unwilling to risk being
> publicly identified as having done so.  For example, he
> recently told the Texas Lawyer: "You have people that
> might be OK purchasing music off iTunes, but they're not
> OK letting their wife know that they are purchasing
> pornography. . . [.] Most people just call in to settle.
> We have a 45 percent settlement rate."  John Council,
> Adult Film Company's Suit Shows Texas is Good for
> Copyright Cases, Texas Lawyer, Oct. 4, 2010.

Mot. Elec. Frontier Found. Leave File Amicus Curaie Br. Supp.
Third Party Time Warner Cable's Mot. Quash Modify Subpoenas, Ex.
1, Mem. Amicus Curiae Elec. Frontier Found. Supp. Third Party
Time Warner Cable's Mot. Quash Modify Subpoena, at 16, Third
World Media LLV v. Does 1-1243, No. 3:10-cv-0090 (N.D.W.V. Nov.
23, 2010).

to the judicial processes of subpoenas and early discovery.[6]

Furthermore, many courts are eradicating these mass filings on

the ground that joinder of tens, hundreds, and sometimes

thousands of alleged infringers is improper,[7] and some have

admonished the plaintiff adult film companies for evading such

substantial court filing fees as they have through the joinder

mechanism.[8]  Still, a number of courts have upheld the joinder of

---

[6] For example, in the Northern District of California, a magistrate judge refused to grant expedited discovery to subpoena the ISP providers for the Doe defendants' identities after noting that the adult film company plaintiff conceded that to its knowledge, neither it nor any other plaintiff had ever served a single Doe defendant after early discovery had been granted. Hard Drive Prods., Inc. v. Does 1-90, No. C 11-03825 HRL, 2012 WL 1094653, at *3 & n.4 (N.D. Cal. Mar. 30, 2012).  The court censured the plaintiff, stating "Plaintiff seeks to enlist the aid of the court to obtain information through the litigation discovery process so that it can pursue a non-judicial remedy that focuses on extracting 'settlement' payments from persons who may or may not be infringers.  This court is not willing to do." Id. at *7.  Here in the District of Massachusetts, Judge Stearns recently issued an Order to Show Cause in a similar case as to why the court "should not exercise its discretion under Rule 21 to sever all of the Doe defendants but one, while permitting [the plaintiff] to refile against each of the defendants in separate actions." New Sensations, Inc. v. Does 1-201, No. 12-CV-11720-RGS, 2012 WL 4370864, at *1 (D. Mass. Sept. 21, 2012) (Stearns, J.).

[7] See, e.g., Patrick Collins, Inc. v. Does 1-23, No. 11-CV-15231, 2012 WL 1019034, at *4 (E.D. Mich. Mar. 26, 2012) (severing the Doe defendants because the infringement of the film via BitTorrent did not constitute a "series of transactions or occurrences" as required under Federal Rule of Civil Procedure 20(a)); SBO Pictures, 2011 WL 6002620, at *3 (same).

[8] In In re BitTorrent Adult Film Copyright Infringement Cases, the magistrate judge estimated that "plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory. . . .  Nationwide, these plaintiffs

Doe defendants as proper and efficient, issued subpoenas, and permitted early discovery.[9]

This Court takes this occasion to address the issue of whether joinder of Doe defendants who allegedly infringed a copyrighted film via file sharing technology in a single swarm is permissive under Federal Rule of Civil Procedure 20(a), and, if so, whether any protective measures ought be taken by the Court pursuant to its broad discretion under Federal Rule of Civil Procedure 20(b).

## II.  ANALYSIS

### A.  Procedural Posture

On April 28, 2012, Third Degree Films, Inc. ("Third Degree") sued forty-seven Doe defendants, identified only by their IP addresses.  Compl. Copyright Infringement ("Compl."), ECF No. 1. Two days later, Third Degree filed an emergency motion for expedited discovery, seeking to subpoena the respective Internet Service Providers ("ISPs") to obtain the Doe defendants' personal

---

have availed themselves of the resources of the court system on a scale rarely seen.  It seems improper that they should profit without paying statutorily required fees."  2012 WL 1570765, at *13.

[9] See, e.g., Patrick Collins, Inc. v. Does 1-39, No. 12-CV-00096-AW, 2012 WL 1432224, at *3 (D. Md. Apr. 24, 2012) (holding that joinder was proper, as the adult film company plaintiff had demonstrated a logical relationship between the series of individual downloads of the film via BitTorrent, and denying motion to quash the subpoena); First Time Videos, LLC v. Does 1-76, 276 F.R.D. 254, 257 (N.D. Ill. 2011) (same).

identifying information.  Pl.'s Emergency Ex-Parte Mot. Early

Disc., ECF No. 3.  This Court granted the motion and issued a

modified order, instructing the ISPs to notify the subscribers of

the subpoena, allow them thirty days from the date of notice to

move to quash or vacate the subpoena, and then disclose the

subpoenaed information to Third Degree.  Order Granting Pl.'s

Emergency Ex-Parte Mot. Early Discovery, ECF No. 7.

Subsequently, several Doe defendants moved to quash the

subpoena, sever the defendants, or dismiss the action.  Def. Doe

No. 44's Mot. Quash ("Doe 44's Mot."), ECF No. 8; Mot. Quash &

Mem. Supp. Mot. ("Doe 19's Mot."), ECF No. 9; Mot. Doe 10 Sever

Dismiss Alt. Objection Inspection Mot. Quash ("Doe 10's Mot."),

ECF No. 10; Def. Doe 34's Mot. Quash, Issuance Protective Order,

Dismiss Compl., Incorporated Mem. Law ("Doe 34's Mot."), ECF No.

13; Doe 12's Mot. Sever & Dismiss, Alt., Mot Quash Subpoena ("Doe

12's Mot."), ECF No. 16; Consol. Mot. Quash Subpoena Pursuant

FRCP 45, Alt., Mot. Sever Pursuant FRCP 21 ("Doe 22's Mot."), ECF

No. 18.  Third Degree filed opposition briefs to the various

motions.  Opp'n (ECF No. 9) Doe's Mot. Quash, ECF No. 19; Opp'n

(ECF No. 8) Doe's Mot. Quash, ECF No. 20; Opp'n (ECF No. 10 & 16)

Mots. Sever, Dismiss, Alt. Mot. Quash Subpoena ("Pl.'s Opp'n

Br."), ECF No. 21; Opp'n (ECF No. 13) Doe's Mot. Quash, Issuance

Protective Order, Dismiss Compl., ECF No. 22; Opp'n (ECF No. 18)

Doe's Mot. Quash Sever, ECF No. 24.

Third Degree has notified the Court of dismissal with prejudice of the following Doe defendants to date: Doe 8, Doe 13, Doe 14, Doe 23, Doe 26, Doe 30, Doe 36, Doe 39, Doe 43 and Doe 46.  Dismissal Prejudice Specific Does, ECF Nos. 25, 26, 27, 30. On September 7, 2012, Third Degree moved for a 120-day extension to serve the now-identified defendants with a complaint and summons.  Pl.'s Mot. Enlargement Time Service, ECF No. 28.

**B.   Facts as Alleged**

Third Degree produced and owns a valid copyright to the adult film, "MILF Wars: Lisa Ann Vs. Julia Ann" (the "Film"). Compl. ¶ 8.  Without Third Degree's authorization, Does 1-47 reproduced and distributed to the public at least a substantial portion of the Film using the BitTorrent file transfer protocol ("BitTorrent").  <u>Id.</u> ¶ 19.

As this Court previously described in <u>Liberty Media Holdings, LLC</u> v. <u>Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7 B5BC9C05</u>,

> BitTorrent is a peer-to-peer file-sharing protocol used for the distribution and sharing of data over the Internet, including files containing digital versions of motion pictures.   BitTorrent is different from traditional peer-to-peer networks in that it organizes all users who wish to download a particular file into a collective distribution network, known as a "swarm." Being part of a swarm allows users to simultaneously download and upload pieces of the media file from each other, rather than download the entire file from a single source.
> File sharing through the BitTorrent network begins with a single individual, often referred to as a "seed" user or "seeder," who intentionally chooses to share a

particular file with a BitTorrent swarm.  The original
file in this case contains the entire Motion Picture.
Once the file has been shared by the seed user, other
members of the swarm can download the original file,
which creates an exact digital copy on the computers of
the downloading users.  Each user requesting to download
the file becomes a member of the swarm and consequently
receives pieces of the original file.  Eventually, the
entire file is broken into pieces and distributed to
various members of the swarm who may then "reassemble"
the file by exchanging pieces with one another.  Once a
piece of the file is downloaded, it is immediately made
available for distribution to other users seeking to
download the file, subsequently turning each downloader
into an uploader.  This sequence leads to the "rapid
viral sharing" of the file.

[The Doe defendants] collectively participated in a
peer-to-peer swarm to download, copy, and distribute the
Motion Picture file . . . .  After searching for and
obtaining a torrent file containing information
sufficient to locate and download the Motion Picture,
each defendant opened the torrent file using a BitTorrent
client application that was specifically developed to
read such files.  [The Doe defendants] then traded pieces
of the file containing a digital copy of the Motion
Picture with each other until each user had a partial or
complete copy of the Motion Picture on his or her
computer.  Each defendant owns or has control of a
computer that contained (and possibly still contains) a
torrent file identifying the Motion Picture, as well as
a partial or complete copy of the Motion Picture itself.

821 F. Supp. 2d 444, 448 (D. Mass. 2011) (citations omitted).

## C.   Permissive Joinder of Defendants

This Court previously has confronted the issue of whether

joinder of tens of Doe defendants is permissive in an

infringement action alleging the use of BitTorrent file sharing

technology to redistribute a copyrighted adult film.  Last year,

in Liberty Media, 821 F. Supp. 2d at 451-52, the Court rejected

the Doe defendants' argument that joinder was improper and held

9

that the swarm participants could be permissively joined under Rule 20.[10]   The Court acknowledged that post-discovery, certain defendants might raise factual distinctions meriting severance of their claims, but maintained that the defendants were properly joined at the early stages of litigation until such distinctions arose.   _Id._ at 451 n.6.

Since its decision was issued in _Liberty Media_, this Court has entertained a profusion of filings in the mass copyright infringement cases on its docket.   Upon further reflection and a deeper understanding of the policy concerns at play, the Court now revisits and amends its holding in _Liberty Media_.   The Court continues to maintain that joinder is technically proper under Rule 20(a).   The Court now holds, however, that in light of its serious concerns regarding prejudice to the defendants as a result of joinder, it ought exercise the broad discretion granted it under Rule 20(b) and sever the Doe defendants in this action and in similar actions before this Court.

### 1.   Permissive Joinder Under Federal Rule of Civil Procedure 20(a)

Federal Rule of Civil Procedure 20(a)(2) provides that defendants may be joined in a single action if "any right to

---

[10] As noted by the Court in _Liberty Media_, the issue of permissive joinder was raised improperly by the defendants in their motion to quash, rather than in a motion to sever.   821 F. Supp. 2d 451 n.5.   The Court noted this procedural defect, but went on to analyze and reject the merits of the defendants' joinder argument.   _Id._

relief is asserted against them . . . arising out of the same
transaction, occurrence, or series of transactions or
occurrences," Fed. R. Civ. P. 20(a)(2)(A), and "a question of law
or fact common to all defendants will arise," id. 20(a)(2)(B).
The majority of courts holding that joinder is improper in like
cases have held so on the basis that the allegations do not arise
out of the same transaction, occurrence, or series of
transactions or occurrences.  See, e.g., Patrick Collins, Inc. v.
Does 1-23, No. JFM 8:12-cv-00087, 2012 WL 1144918, at *6 (D. Md.
Apr. 4, 2012) (holding that joinder was improper under Rule
20(a)(2)(B) because "the alleged infringement was committed by
unrelated defendants, through independent actions, at different
times and locations"); Liberty Media Holdings LLC v. BitTorrent
Swarm, 277 F.R.D. 672, 675 (S.D. Fla. 2011) (holding that joinder
was improper under Rule 20(a)(2)(B) because the alleged
infringement occurred on different days and at different times
during a two-week period, and noting that even if the
infringement did occur at the same time, "due to the
decentralized operation of BitTorrent, this fact alone would not
imply that Defendants participated in or contributed to the
downloading of each other's copies of the work at issue"
(internal quotation marks and citation omitted)); Hard Drive
Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1163 (N.D. Cal.
2011) (holding that joinder was improper under Rule 20(a)(2)(B)

11

because "[u]nder the BitTorrent Protocol, it is not necessary that each of the [Doe defendants] participated in or contributed to the downloading of each other's copies of the work at issue – or even participated in or contributed to the downloading by any of the [Doe defendants]").  The moving Doe defendants in the instant case similarly argue that joinder is improper under Rule 20(a)(2)(B).  Doe 22's Mot. 3; Doe 10's Mot. 2; Doe 34's Mot. 7.

In Liberty Media, this Court concluded – albeit in a rather summary fashion – that the Doe defendants' alleged behavior satisfied the "same transaction or occurrence" requirement, relying on Liberty Media's assertion that "a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, and where a group of uploaders collaborate to speed the completion of each download of the file."  821 F. Supp. 2d at 451 (citation omitted).  After considering the case law submitted by the parties in this case, the Court continues to hold that Doe defendants alleged to infringe a film in a single BitTorrent swarm meet the "same transaction or occurrence" requirement of Rule 20(a).

The Court is instructed by a recent Federal Circuit decision in a patent infringement case, which articulates a useful standard for whether joinder is proper under Rule 20(a)(2)(B).  In In re EMC Corp., 677 F.3d 1351, 1356 (Fed. Cir. 2012), the court began by noting that joinder is permissive even for

independent actors who are not sued on a theory of joint liability.  The court found guidance for the "same transaction or occurrence" requirement of Rule 20(a)(2)(B) in the jurisprudence on Rule 13(a) for compulsory counterclaims, in which courts have construed similar language to the "same transaction or occurrence" requirement of Rule 20(a)(2)(B) as requiring a "logical relationship" between the claims.  Id. at 1357-58 (citing the Eighth and Eleventh Circuits, which have also extended the "logical relationship" test of Rule 13(a) to Rule 20(a)).  The Federal Circuit asserted that the logical relationship test would be satisfied in the joinder context where there was "substantial evidentiary overlap in the facts giving rise to the cause of action of each defendant," id. at 1358; put another way, "the defendants' alleged infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts."  Id.

In Third Degree Films v. Does 1-36, No. 11-cv-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012), a magistrate judge persuasively applied the In re EMC Corp. standard to the alleged infringement of an adult film by individuals in a single BitTorrent swarm.  The court issued an opinion and order denying a motion to sever the Doe defendants, framing the issue as "whether Plaintiff has sufficiently pled that each defendant's act of infringement - downloading and uploading pieces of a

13

digital version of the [film] - share 'an aggregate of operative facts . . . .'" Id. at *6 (citing In re EMC Corp., 677 F.3d at 1351). The court held that the Plaintiff had met its burden in this regard, at least at the early stages of litigation. Id. at *7.

The court acknowledged the "substantial merit" of the counter-position to its holding - indeed, the position of some of the Doe defendants in this case - that because a single swarm is comprised of thousands of peers, and because the transmissions by the Doe defendants occurred over a period of several weeks, it is possible - perhaps likely - that a particular Doe defendant did not upload to or download directly from any of the other Doe defendants named in the complaint. Id. at *8.

But the Does 1-36 court was persuaded - as is this Court - by the "equally weighty contrary case law" which holds that the plausible indirect interactions between the named Doe defendants constitute "shared, overlapping facts" which suffice to establish a "series of transactions or occurrences."[11] Id. at *8-9; see

---

[11] It gives this Court pause that district courts are so divided over whether file sharing via the BitTorrent protocol constitutes a "series of transactions or occurrences" in satisfaction of Rule 20(a)(2)(B). The inquiry is so fact-intensive, and the BitTorrent protocol so technologically complex, that no principled conclusions have emerged from the abundance of recent case law and this Court is not entirely comfortable hanging its hat on its own understanding of the process. Yet, cognizant of the oft-quoted averment of the Supreme Court that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the

also, e.g., <u>Hanley</u> v. <u>First Investors Corp.</u>, 151 F.R.D. 76, 79
(E.D. Tex. 1993) ("Imagine a number of 'transactions or
occurrences' spread out through time and place.  They are not
directly continuous, or else they would constitute one
transaction or occurrence rather than a number of them.  What
would make them a 'series?'  The answer is some connection or
logical relationship between the various transactions or
occurrences.").  The <u>Does 1-36</u> court explained:

> it is important to consider that while a peer directly
> uploads to only a small number of peers, those peers in
> turn upload pieces to other peers that later join the
> swarm.  Thus, a defendant's "generation" of peers - peers
> that a defendant likely directly uploaded to - helped
> pass on pieces of the Work to the next "generation" of
> active peers.  For example, it is not implausible that
> John Doe No. 10, who apparently participated in the swarm
> on July 18, 2011, shared pieces of the Work with peers
> that in turn, helped propagate the Work to later joining
> peers.  Therefore, Doe No. 10 plausibly indirectly
> uploaded pieces of the work to, say, Doe No. 25 who
> participated in the swarm four days later. Indeed, it is
> beyond dispute that the initial seeder <u>indirectly</u>
> uploaded pieces of the Work to every peer in the swarm —
> no matter when they joined.

<u>Id.</u> (citing <u>Patrick Collins, Inc.</u> v. <u>Does 1-21</u>, No. 11-15232,
2012 WL 11908040, at *5 (E.D. Mich. Apr. 5, 2012).  The court
held, and this Court concurs, that the allegations of

_____

parties," <u>United Mine Workers of Am.</u> v. <u>Gibbs</u>, 383 U.S. 715, 724
(U.S. 1966), the Court holds that the interaction of the Doe
defendants via BitTorrent - even if indirect - is significant
enough to bring them within the broad scope of permissibly joined
parties under Rule 20(a).  Instead, the Court grounds its
determination to sever the Doe defendants in this action and like
actions on a basis squarely within the Court's expertise:
fundamental fairness and justice to all parties.

infringement via BitTorrent swarm plead more than simply that the
Doe defendants "committed the exact same violation of the law in
exactly the same way," id. (internal quotation marks and citation
omitted), but rather that the Doe defendants plausibly infringed
the Film through a series of transactions or occurrences.  See
also, e.g., Patrick Collins, Inc. v. Does 1-39, No. 12-CV-00096-
AW, 2012 WL 1432224, at *3 (D. Md. Apr. 24, 2012) ("Although the
downloads in this case occurred over a span of around three
months, suggesting that the Does were not downloading the
copyrighted movie at the exact same time, Plaintiff has
adequately alleged that each download directly facilitated the
others in such a way that the entire series of transactions would
have been different but for each of Defendants' infringements.");
Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 244 (S.D.N.Y.
2012) ("[I]t is difficult to see how the sharing and downloading
activity alleged in the Complaint - a series of individuals
connecting either directly with each other or as part of a chain
or 'swarm' of connectivity designed to illegally copy and share
the exact same copyrighted file - could not constitute a 'series
of transactions or occurrences' for purposes of Rule 20(a).").

The Court also continues to hold that allegations of
infringement through the use of BitTorrent file sharing
technology meet the first prong of Rule 20(a)(2) requiring common
questions of law or fact.  As the Court explained in Liberty

<u>Media</u>, common questions of law exist in that the allegations asserted against the Doe defendants are identical, and common questions of fact exist as to the method of infringement using BitTorrent.  821 F. Supp. 2d at 451; <u>see also</u> <u>Does 1-36</u>, 2012 WL 2522151, at *4 ("Plaintiff has alleged the same legal causes of action involving the same digital file against each of the defendants.  Plaintiff has also alleged that the same investigation led to the discovery of the IP addresses allegedly associated with Defendants." (citations omitted)).  The moving Doe defendants in this case do not contest that the common question of law or fact requirement is satisfied, and the Court will not belabor the point.

### 2. Protective Measures Under Federal Rule of Civil Procedure 20(b)

While the Court holds that joinder is permissive under Rule 20(a), analysis does not end there.  Under Federal Rule of Civil Procedure 20(b) ("Rule 20(b)"), entitled "Protective Measures," the Court has broad discretion to "issue orders - including an order for separate trials - to protect a party against embarrassment, delay, expense, or other prejudice."  Fed. R. Civ. P. 20(b).  As noted in the Introduction, the Court has serious concerns regarding the propriety of joinder of tens, hundreds, or thousands of Doe defendants in these adult film mass copyright infringement cases.

17

The purpose of permissive joinder of parties is "to promote trial convenience and expedite the final determination of disputes."  7 Charles Alan Wright et al., 7 Federal Practice and Procedure § 1652 (3d ed. 2012).  In each of its opposition briefs, Third Degree argues that joinder of the Doe defendants would promote judicial efficiency, and ought therefore be permitted.  See, e.g., Pl.'s Opp'n Br. 9.  Yet the joinder of forty-seven defendants, each of whom may raise different factual and legal defenses to Third Degree's claims, is contrary to those stated ends.  As one court contemplated,

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . .  Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.  Joinder is improper.

BMG Music v. Does 1-203, No. Civ.A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).  Even in the infancy of this action, it is clear that the Doe defendants will raise disparate defenses.  For example, Doe 34 has indicated that she is a single thirty-nine year-old professional woman employed in a senior position in the financial industry, and owns a two-family home, residing in one unit and renting out the other unit.  Doe 34's Mot. 3.  She denied ever having downloaded or viewed the Film, but indicated that she provides wireless Internet for the tenants in the

adjacent unit.  Id. at 4.  Doe 5 has asserted that the infringing
IP address identified on the notice is not Doe 5's IP address,
and argues that any such download was through a "'jacked or
bootlegged connection' to the ISP network."  Mot. Extension Time
Obtain Legal Legal [sic] Counsel 1, ECF No. 23.  Doe 10 denies
that he/she, or anyone in the household, downloaded the Film.
Doe 10's Mot. 2.

While it is true that there is factual overlap regarding the
Doe defendants' alleged method of infringement via BitTorrent, it
is evident that the crux of the cases, should they proceed to
trial, will be the individual factual claims of each defendant.
As the court aptly described in CineTel Films, Inc. v. Does 1-
1,052,

> To maintain any sense of fairness, each individual
> defendant would have to receive a mini-trial, involving
> different evidence and testimony.  The enormous burden of
> a trial like this "completely defeat[s] any supposed
> benefit from the joinder of all Does . . . and would
> substantially prejudice defendants and the administration
> of justice."

853 F. Supp. 2d 545, 554 (D. Md. 2012) (citing Hard Drive Prods.,
809 F. Supp. 2d at 1164); see also On the Cheap LLC v. Does 1-
5011, 280 F.R.D. 500, 503 (N.D. Cal. 2011) ("Because the large
number of defendants with individual issues will create 'scores
of mini-trials involving different evidence and testimony' and
complicate the issues for all those involved, it is more
efficient to proceed with separate cases where there will be

separate proceedings, including separate motion hearings and ADR efforts." (citation omitted)).  The Court simply cannot see how it "promote[s] trial convenience" to hold forty-seven mini-trials and ask one jury to make findings as to each of them.

The Court further agrees with the reasoning in <u>Pacific Century Int'l, Ltd.</u> v. <u>Does 1-101</u> that joinder of the Doe defendants would transform what "appears to be a relatively straightforward case" into "a cumbersome procedural albatross." No. C-11-02533 (DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011).  The court explained:

> To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions — a thoroughly unmanageable and expensive ordeal.  Similarly, <u>pro se</u> Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost.

<u>Id.</u>

To the extent that case management may be more efficient at certain stages of the litigation were the defendants in a single action, the Court retains discretion under Federal Rule of Civil Procedure 42(a) to consolidate any or all of the matters for some portion of the process.  Fed. R. Civ. P. 42(a).  Thus, the Court may consolidate the cases for purposes of discovery or early motion practice.  <u>See</u> <u>id.</u>  Moreover, if it appears that the method of infringement via BitTorrent protocol is largely uncontested, perhaps that matter might be stipulated.

Alternatively, the Court could join the defendants and try that limited issue before a jury and then, applying the principles of issue preclusion, use the jury's finding in the separate trials of each defendant.  Thus, joinder is not the only procedural mechanism by which the Court efficiently can administer these cases; indeed, it may create significant inefficiencies.  In light of the Court's reservations regarding the prejudicial effect of joinder at the action's inception, the Court declines to permit joinder of the Doe defendants, and will instead consolidate the independent actions to the extent necessary.

Moreover, this Court is concerned that the joinder mechanism is being manipulated to facilitate a low-cost, low-risk revenue model for the adult film companies.  See Christopher M. Swartout, Comment, Toward a Regulatory Model of Internet Intermediary Liability: File-Sharing and Copyright Enforcement, 31 Nw. J. Int'l L. & Bus. 499, 509-10 (2011) (describing the "purely profit-driven" "low-cost, high-volume campaigns to collect settlements from file-sharers").  Third Degree and like companies file a single cookie-cutter complaint alleging copyright infringement against tens, hundreds or thousands of individuals based on their IP addresses, paying only a single $350.00 filing fee, and likely employing a contingency fee structure.  See James DeBriyn, Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages, 19 UCLA

21

Ent. L. Rev. 79, 91 (2012) (noting that in these cases, the
contingency fee structure is reversed so that the law firm keeps
70 percent, and explaining that this structure allows copyright
holders to "monetize peer-to-peer (P2P) activity and realize
revenues from an unexpected source - Internet piracy" (citation
omitted)).

The company then moves for early discovery, subpoenas the
Doe defendants' identifying information from the ISPs, and sends
the defendants settlement demand letters. <u>Id.</u> at 95-96.  The
company relies on the combined threat of substantial statutory
damages and the embarrassment of being publicly named as
illegally downloading a pornographic film (not to mention the
pressure applied by the knowledge that co-defendants are
settling), to assume that at least some of the defendants will
settle for perhaps $2,000.00 or $3,000.00 - which result comes at
minimal cost to the company.  <u>See id.</u> at 98-99.

Other courts have noted the same pattern and expressed
similar misgiving.  In <u>SBO Pictures, Inc.</u> v. <u>Does 1-3036</u>, the
court explained:

> Indeed, the Court is concerned that Plaintiff's
> motive for seeking joinder of over three thousand Doe
> Defendants in one action may be . . . to coerce
> . . . settlements. As Plaintiff's counsel surely knows,
> trial of a suit with thousands of individual defendants
> would present unmanageable difficulties.  The vast
> majority of these mass copyright infringement suits are
> resolved through settlement once the plaintiff secures
> the information identifying the Does. . . .  However,
> "while the courts favor settlements, filing one mass

> action in order to identify hundreds of doe defendants
> through pre-service discovery and facilitate mass
> settlement, is not what the joinder rules were
> established for."

No. 11-4420 SC, 2011 WL 6002620, at *3-4 (N.D. Cal. Nov. 30,
2011) (citing Patrick Collins, Inc. v. Does 1-3757, No. C
10-05886 LB, 2011 WL 5368874, at *2 (N.D. Cal. Nov. 4, 2011)
(other citations omitted) (internal quotation marks omitted)).

In In re BitTorrent Adult Film Copyright Infringement Cases,
the court averred that "[o]ur federal court system provides
litigants with some of the finest tools available to assist in
resolving disputes; the courts should not, however, permit those
tools to be used as a bludgeon." Nos. 11-3995(DRH)(GRB),
12-1147(JS)(GRB), 12-1150(LDW)(GRB), 12-1154(ADS)(GRB), 2012 WL
1570765, at *10 (E.D.N.Y. May 1, 2012) This Court is in complete
agreement.

This Court is ever mindful of the mandate of Federal Rule of
Civil Procedure 1, that the Federal Rules of Civil Procedure
ought be "administered to secure the just, speedy, and
inexpensive determination of every action." Fed. R. Civ. P. 1.
Indeed, this Court zealously encourages all parties in actions
pending before it to reach settlement if possible, as private
resolution is frequently the most just and cost-effective result.
See Philip W. Tone, The Role of the Judge in the Settlement
Process, Fed. Judicial Ctr., Seminars for Newly Appointed United
States District Judges 57, 60 (West 1975).

Yet, it is precisely when private resolution is intimated to be unjust that this Court's role shifts from encouraging such an agreement to protecting against it.  See In re Relafen Antitrust Litigation, 231 F.R.D. 52, 57-58 (D. Mass. 2005).  As the court asserted in Third Degree Films, Inc. v. Does 1-108, No. DKC 11-3007, 2012 WL 1514807 (D. Md. Apr. 27, 2012), "the risk of extortionate settlements is too great to ignore, especially when joinder is being used to that end."  Id. at *4.  To be clear, the Court has not observed any specific bad faith behavior in this case by Third Degree to date,[12] as has occurred in other cases.  Cf. Raw Films, Ltd. v. Does 1-32, No. 3:11cv532-JAG, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) (noting that the plaintiff contacted the defendants with harassing telephone calls, demanding $2,900.00 to end the litigation, and when any of the defendants filed a motion to dismiss or sever, the plaintiff voluntarily dismissed the individual from the litigation).  Rather, the Court takes issue with the general structure of this

---

[12] The Doe defendants argue that Third Degree is engaged in improper and abusive litigation tactics, see, e.g., Doe 12's Mot. 2, but raise no specific examples in this regard.  The Court takes judicial notice of a purported class action pending against Third Degree and four other adult film companies alleging, inter alia, that its actions in similar mass copyright infringement suits cause it to be liable for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, intentional infliction of emotional distress, and fraud.  See Compl. with Class Allegations Jury Demand as to All Counts 6, Barker v. Patrick Collins, Inc., No. 3-12-cv-372-S (W.D. Ky. July 5, 2012).

case[13] and like cases, and has determined that the most
appropriate method to protect against any potential coercion is
to sever the Doe defendants and require them to be sued
individually.

Requiring Third Degree to sue the defendants separately
serves several purposes.  First, it compels Third Degree to pay a
$350.00 filing fee for each defendant, a statutory requirement
under 28 U.S.C. § 1914(a) that serves "two salutary purposes.
First, it is a revenue raising measure. . . .  Second, § 1914(a)
acts as a threshold barrier, albeit a modest one, against the
filing of frivolous or otherwise meritless lawsuits."  In re Diet
Drugs, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004).  A magistrate
judge recently reprimanded a plaintiff adult film company for
evading more than $25,000.00 in filing fees by suing thousands of
defendant Does in four actions, and noted the incentive for the
plaintiff to bring these suits en masse where a single filing fee
might result in a flurry of settlement agreements.  In re

---

[13] Although the instant case names only forty-seven Doe
defendants, as opposed to hundreds or thousands of defendants
sued in some of the cited cases, Third Degree currently has
identical cases pending for infringement of one of three adult
films ("MILF Wars: Lisa Ann Vs. Julia Ann," "Illegal Ass 2," or
"Big Butt Oil Orgy 2") against a total of 238 individuals in the
District of Massachusetts, 164 individuals in the District of
Maryland, and 615 individuals in the Southern District of New
York, for a total of 1,017 Doe defendants in 13 actions in just
three districts.  While Third Degree admittedly is no longer
suing as many individuals in a single action, there are still an
alarming number of defendants pending.

<u>BitTorrent Adult Film Copyright Infringement Cases</u>, 2012 WL 1570765, at *12-13.  Requiring Third Degree to pay a filing fee for each defendant may help ensure Third Degree is suing the Doe defendants for a good faith reason, that is, to protect its copyright and litigate its claim, rather than obtain the defendants' information and coerce settlement with no intent of employing the rest of the judicial process.  Moreover, as discussed above, severing the defendants will promote fairness and efficiency in trial administration.

The Court acknowledges without reservation Third Degree's right to assert copyright protection of the Film and to sue individuals who infringe on its intellectual property.  But after a careful weighing of the balance of potential injustices in this case and like cases, the Court determines that any efficiency gains and cost benefits to Third Degree from joining the Doe defendants in a single action are substantially outweighed by the fairness concerns and inefficiencies at trial, the potential prejudice from what seems to be a developing pattern of extortionate settlement demands, and the evasion of thousands of dollars of filing fees.

**III. CONCLUSION**

For the foregoing reasons, Does 2-47 are severed from the case and dismissed without prejudice, subject to Third Degree filing individual complaints against them within thirty days of this order.[14]

**SO ORDERED.**


  /s/ William G. Young
  WILLIAM G. YOUNG
  DISTRICT JUDGE

---

[14] This order excepts the following Does, who already have been dismissed with prejudice: Doe 8, Doe 13, Doe 14, Doe 23, Doe 26, Doe 30, Doe 36, Doe 39, Doe 43, and Doe 46.